# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| **CLYDE MCKINNEY, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action No. _____ |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |
| **ATLANTA NATIONAL LEAGUE BASEBALL CLUB, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff **Clyde McKinney, Jr.** ("Plaintiff" or "McKinney") brings this civil action for relief and damages against Defendant **Atlanta National League Baseball Club, LLC** ("Defendant" or "Atlanta Braves" or "Braves") based on the following factual allegations and causes of action:

## NATURE OF THE ACTION

1. This is an action to correct disability discrimination in hiring practices by one of the premier franchises in Major League Baseball, the 2021 World Champion Atlanta Braves.

1

2. Plaintiff Clyde McKinney, Jr. brings a discrimination claim against the Braves under the Americans with Disabilities Act of 1990 ("ADA"), as amended in 2008, 42 U.S.C.A. § 12112(a), and a separate claim for retaliatory conduct after he exercised his right to challenge disability discrimination, 42 U.S.C.A. § 12203(a).

3. To remedy the Braves' unlawful conduct, McKinney seeks economic damages for wages of which he was unlawfully deprived and front pay; compensatory damages for mental anguish and emotional distress; punitive damages; his attorneys' fees and costs of litigation; and declaratory relief to deter a repeat of the blatant disability discrimination practiced by the Atlanta Braves as demonstrated in this litigation.

## THE PARTIES

4. McKinney resides in the state of Alabama. During the time of the events alleged in this complaint, he was applying for an in-office position as a senior-level information technology ("IT") officer with the Atlanta Braves, to be based in their corporate office in Cobb County, Georgia.

5. At all times relevant to this complaint, McKinney is an individual with a hearing impairment who could have performed the job for which he applied with or without reasonable accommodation. 42 U.S.C.A. §§ 12102(1)(A) and 12112(b)(5)(A).

## PERSONAL JURISDICTION

6.      Defendant may be served with proper process through its registered agent on record with the Georgia Secretary of State: CSC of Cobb County, Inc., 192 Anderson St. SE, Suite 125, Marietta, Georgia 30060.

## SUBJECT-MATTER JURISDICTION AND VENUE

7.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

8.      Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in and the alleged unlawful acts occurred in this judicial district and division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      On October 10, 2023, Plaintiff filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 410-2023-08141. A copy is attached as Exhibit A.

10.     Plaintiff subsequently received a right-to-sue letter from the EEOC on January 5, 2024. A copy is attached as Exhibit B.

11.     Plaintiff timely files his ADA claims within 90 days of receiving his right-to-sue letter.

## FACTUAL ALLEGATIONS

12. Clyde McKinney, Jr. is a deaf person. He navigates in-person and virtual interactions through a range of adaptive tools, including traditional techniques like American Sign Language ("ASL") and lip reading. McKinney is also able to verbally communicate.

13. McKinney sometimes uses an interpretative answering service in which another individual translates and conveys in real time telephone communications.

14. McKinney's hearing impairment has not prevented him from building a 23-year career as a data and network system engineer for multimillion-dollar companies like GEOcommand, Inc., and Carpathia Hosting, and a global giant in the IT sector, IBM.

15. In January 2023, McKinney submitted an application for the position of Director IT Engineering and Architecture for the Atlanta Braves, a senior-level role.

16. McKinney advanced through two rounds of virtual interviews with Braves human resources ("HR") staff. His interviewers praised the robustness of his experience, and several told him that the extensiveness of his background ensured that he would be a capable and proficient asset to the team's IT operation.

17. Not one initial interviewer told McKinney that his lack of documented experience managing personnel was a disqualifying impediment.

18. On March 22, 2023, McKinney participated in a virtual interview with Scott Waid, Senior Vice President of Technology. McKinney's interpretative translator also participated.

19. From the inception of the interview, Waid posed pointed questions about the extent of McKinney's hearing impairment, including whether McKinney could hear any part of Waid's communications. Waid probed McKinney on how much he relied on the interpreter, whether the interpreter would need to be physically present at work, and whether the interpreter had a sophisticated grasp of IT issues.

20. There was little to no conversation about McKinney's comprehension of the array of technical issues the job required. At one point, Waid oddly asked McKinney to discuss his experiences attending a deaf awareness event at a Braves game, a community outreach feature that had no ostensible relevance to an IT Director role. It was the equivalent of asking an African-American IT candidate if he had enjoyed the HBCU night promotional event the team sponsors every summer.

21. At another point, Waid openly speculated about the potential cost of an interpretative translator being housed on-site to assist McKinney; then Waid observed that the team had not budgeted for such a personnel slot.

22. Waid openly observed that McKinney's impairment might compromise his ability to serve as a thought leader and personnel manager and might generate a communications "barrier" for McKinney. In other words, to the extent McKinney's managerial credentials were discussed, it was in the narrow context of whether his deafness impaired his capability to lead.

23. On April 20, 2023, McKinney received a notice on his application portal that the Braves would not be selecting him for the IT Director job.

24. McKinney raised concerns with a Braves job recruiter in late April 2023 through the social media career platform LinkedIn that there had been a disproportionate focus on McKinney's hearing limitations during his interview.

25. McKinney's comments were shared by this Braves recruiter with the People Capital team, which performs much of the HR personnel component for the Braves; in turn, a member of the team, Shannon De-Zilva White, met with McKinney on or about May 12, 2023.

26. On June 8, 2023, McKinney initiated the EEOC's online intake for filing a charge of discrimination.

27. On or about June 16, 2023, De-Zilva White informed McKinney that the department had interviewed Waid and that he had acknowledged conveying to McKinney that he was not a good candidate for the IT Director job because of his "communication barriers" and the financial cost of potentially needing to secure a full-time ASL interpreter, which, in fact, is an accommodation McKinney never requested during the interview.

28. According to De-Zilva White, her department concluded that Waid's comments and refusal to continue consideration of McKinney's candidacy had likely violated the Braves' internal policies regarding inclusion and equity for disabled individuals.

29. At one point, De-Zilva White referred to Waid's perspective that deafness meant McKinney had "special privileges to communicate and we would have to pay for it."

30. During this exchange, De Zilva-White told McKinney that she believed he was equipped to perform a number of tasks for the team in the IT field and that she would proactively help McKinne identify future options for employment with the Braves.

31. Before their conversation ended, and after De-Zilva White discussed assisting McKinney with locating other appropriate roles, McKinney volunteered to De-Zilva White that he had started the EEOC charge process.

32. McKinney made multiple attempts by email to follow up with De-Zilva White on other postings or career opportunities; De-Zilva White met with him again on Microsoft Teams on or about July 11, 2023.

33. During the July 11 exchange, De-Zilva White commented that she had not yet identified any other roles for McKinney, but she questioned him about the status of the EEOC process. He then revealed that not only had he started the EEOC process, he had also filed a complaint with the Civil Rights Division of the Department of Justice ("DOJ").

34. The next day, July 12, at her request, McKinney emailed De-Zilva White the file numbers for his DOJ complaint and his EEOC charge.

35. De-Zilva White did not speak to McKinney again. She did not follow up on her pledge to locate viable career opportunities.

36. The Atlanta Braves flagrantly violated McKinney's rights under the ADA. As the organization's HR representative conceded to McKinney, the Braves' Senior Vice President of Technology factored both the implications of an employment candidate's medical impairment and the potential cost of a future

8

ADA accommodation into a hiring decision and treated the combination of those factors as a rationale for refusing to further consider an applicant's candidacy for employment.

37. Vice President Waid's conduct is a near-textbook example of the but-for causation standard that governs ADA cases. But for McKinney's deafness, and the potential that hiring him might require accommodations, McKinney would have remained a viable candidate for the IT Director position that he sought.

38. The Braves themselves identified their potential legal exposure to ADA liability and initially pleaded to mitigate the damage by locating other opportunities for McKinney. When McKinney confirmed his engagement in protected activity in the form of complaints to federal antidiscrimination agencies, the Braves' response was to reverse their commitment.

## CAUSES OF ACTION
### COUNT I
**(Disability discrimination under the Americans with Disabilities Act, 42 U.S.C.A. § 12112(a))**

39. Plaintiff incorporates by reference paragraphs 1-38 of this complaint as though set forth fully and separately herein.

40. Defendant is a covered entity under the ADA. 42 U.S.C.A. § 12111.

41. Plaintiff at all times relevant to this complaint was a person with an ADA-qualifying disability in that he is a deaf individual suffering from a hearing impairment, but he could have performed the IT Director position he sought with the Atlanta Braves with or without reasonable accommodation.

42. But for the Braves' unlawful use of Plaintiff's ADA impairment and the prospect of accommodation as negative factors in the hiring process, Plaintiff would have continued to be considered as a viable candidate for selection as an IT director within the Braves' organization.

43. As a result of Defendant's disability-based discrimination, Plaintiff has suffered various damages, including but not limited to loss of potential wages and front pay; and noneconomic compensatory damages related to mental anguish, emotional distress, and humiliation. Plaintiff has also been made to bear the costs of litigation and attorneys' fees.

44. Defendant's discriminatory conduct was undertaken with malice or reckless indifference to Plaintiff's federally protected rights under the ADA, and Plaintiff is therefore entitled to punitive damages. 42 U.S.C.A. § 1981a(b)(1).

## COUNT II

**(Retaliation under the Americans with Disabilities Act, 42 U.S.C.A. § 12203(a))**

45. Plaintiff incorporates by reference paragraphs 1-38 of this complaint as though set forth fully and separately herein.

46. Plaintiff engaged in protected activity under the ADA by opposing disability-based discrimination, specifically filing a complaint against the Atlanta Braves with the U.S. Department of Justice Civil Rights Division. Plaintiff also engaged in further protected activity by making a charge of disability discrimination against the Braves with the Equal Employment Opportunity Commission.

47. Because of their knowledge of Plaintiff's protected activity, the Atlanta Braves withdrew their commitment to proactively explore with Plaintiff potential future career opportunities, a promise they made in the wake of their own evaluation that a senior official likely violated Plaintiff's ADA rights.

48. The Braves' actions constitute unlawful ADA retaliation.

49. As a result of retaliation by the Atlanta Braves, Plaintiff has suffered various damages, including but not limited to loss of potential wages and front pay; and noneconomic compensatory damages related to mental anguish, emotional distress, and humiliation. Plaintiff has also been made to bear the costs of litigation and attorneys' fees.

50. Defendant's retaliatory conduct was undertaken with malice or reckless indifference to Plaintiff's federally protected rights under the ADA, and he is therefore entitled to punitive damages. 42 U.S.C.A. § 1981a(b)(1).

## **PRAYER FOR RELIEF**

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A. Lost economic opportunities, including wages and front pay;

B. Compensatory damages to the full extent allowed by law;

C. Punitive damages;

D. Attorneys' fees and costs of litigation;

E. Pre-judgment and post-judgment interest at the highest lawful rate; and

F. Such other equitable and monetary relief as the Court deems just and proper, including a declaratory judgment that Defendant refrain from disability-based discrimination in the consideration of job applicants and institute corrective measures to avoid a repetition of such disability-based discrimination.

Respectfully submitted the 4th day of April, 2024.

        **HKM Employment Attorneys LLP**

        *s/Artur Davis*
        Artur Davis[1]
        ASB-3672-D56A
        2024 3rd Ave. North, Suite 212

---

[1] Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.

Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com

*s/Jermaine "Jay" Walker*
Jermaine "Jay" Walker
GA Bar No. 142044
3344 Peachtree Rd. NE, Suite 800
Office No. #35
Atlanta, GA 30326
Direct: 404-301-4020
jwalker@hkm.com

**Attorneys for Plaintiff Clyde McKinney, Jr.**